**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VENKATRAMAN CHETTIAR,
                    *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 08-70035

Agency No.
A078-050-369

---

VENKATRAMAN CHETTIAR,
                    *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 08-73865

Agency No.
A078-050-369

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 1, 2011—San Francisco, California

Filed January 17, 2012

Before: Sidney R. Thomas and Richard R. Clifton,
Circuit Judges, and James G. Carr, Senior District Judge.*

Opinion by Judge Thomas

---

*The Honorable James G. Carr, Senior District Judge for the U.S. District Court for the Northern District of Ohio, sitting by designation.

## COUNSEL

Saad Ahmad, Fremont, California, for the petitioner.

Tony West, Assistant Attorney General, Civil Division; John S. Hogan, Senior Litigation Counsel; Robbin K. Blaya, Trial Attorney; Michael C. Heyse, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

THOMAS, Circuit Judge:

This case presents the question of whether the Citizenship and Immigration Service ("CIS"or "Service") loses jurisdiction of a petition to remove conditions placed on residence if it does not adjudicate the petition within ninety days, as required by 8 U.S.C. § 1186a(c)(3)(A). Under the circum-

stances presented here, we conclude that it does not, and we deny the petition for review.

# I

Venkatraman Chettiar, a native and citizen of India, was admitted to the United States as a conditional permanent resident in 2001, on the basis of his marriage to Lourdes A. Soto, an American citizen. 8 U.S.C. § 1186a(a). Chettiar's conditional permanent resident status authorized him to remain in the United States for two years and seek removal of the conditions placed on his residency by submitting a petition to the CIS during the 90-day period immediately preceding the expiration of his two-year conditional residence period. 8 U.S.C. § 1186a(c)(1)(A). Chettiar and Soto submitted an I-751 Petition to Remove the Conditions on Residence to the CIS California Service Center shortly before the end of Chettiar's conditional residence period. The Service forwarded the petition to a CIS district office in Reno, Nevada after concluding that Chettiar failed to provide adequate evidence that he and Soto were engaged in a bona fide marital relationship.

A CIS officer interviewed Chettiar and Soto in Reno on December 13, 2004 and concluded that the documents submitted by the couple were insufficient to demonstrate a valid marital relationship. On March 31, 2005, approximately three and a half months after this initial interview, the CIS requested that Chettiar and Soto appear for another interview in Reno, scheduled for April 8, 2005. Two days before this second interview, Chettiar sent a written request to the CIS asking to reschedule the interview and forward his petition to a CIS office in California, as he had recently relocated to Fremont, California. The CIS rejected Chettiar's request.

After Chettiar and Soto failed to appear for their interview in Reno on April 8, 2005, the CIS concluded that their marriage was fraudulent and denied Chettiar's petition to remove the conditions on his residency. Chettiar did not contest the

merits of the Service's decision to terminate his conditional lawful permanent resident status in immigration court. Instead, Chettiar moved to terminate proceedings or, in the alternative, "administratively close the matter until the agency issues a proper determination in compliance with the Immigration and Nationality Act." Chettiar argued, inter alia, that the CIS violated 8 U.S.C. § 1186a(c)(3)(A) by failing to make a determination on his I-751 petition within 90 days of its initial interview. He contended that "termination [of proceedings] is appropriate," because "failure to comply with the statute renders the proceeding infirm."

The Immigration Judge ("IJ") denied Chettiar's motions to terminate, continue, or administratively close proceedings. The immigration court did not consider Chettiar's claim that the Service's decision was "wrong, improper, [and] violated due process" as he had never filed a request asking the court to review his I-751 Petition, even though the court had advised him to do so "on at least two occasions . . . . [I]n light of the termination of his Conditional Lawful Permanent Residence status," Chettiar was determined by the IJ to be in the United States in violation of 8 U.S.C. § 1227(a)(1)(B) and "removable as charged."

Chettiar appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). On appeal, Chettiar again argued that the Service lacked jurisdiction to review his I-751 petition because it did not reach a determination until more than 90 days after the date of its initial interview. The BIA rejected this argument, concluding "[i]nasmuch as the first scheduled interview was not intended by CIS to be the final interview, we decline to find that the 90 day deadline started running after the first scheduled interview."

The BIA also dismissed Chettiar's claim that the Service's refusal to grant his request to reschedule and change the venue of his second interview constituted a "gross abuse of discretion." The BIA found that the CIS is directed to hold

interviews at a local office "convenient to the parties involved." 8 U.S.C. § 1186a(d)(3). Given that Chettiar's spouse "resided in Nevada at the time of both scheduled interviews" and Chettiar "was willing and able to attend the first interview in Nevada" even though evidence indicated that he resided in California, the BIA determined there was "no reason to find that the second scheduled interview would inconvenience the parties by being held in Nevada."

The BIA concluded that the CIS properly terminated Chettiar's lawful permanent resident status and dismissed his appeal.[1] Chettiar timely petitioned for review. We review the BIA's conclusions of law de novo. *See, e.g., Lim v. INS*, 224 F.3d 929, 933 (9th Cir. 2000).

## II

**[1]** When an alien submits an I-751 Petition to Remove the Conditions on Residence and appears with his spouse for an interview regarding that petition, 8 U.S.C. § 1186a(c)(3)(A) requires that "the Attorney General shall make a determination, within 90 days of the date of the interview, as to whether" the information presented in the joint petition is true. Chettiar argues that the plain language of § 1186a(c)(3)(A) imposes a mandatory 90-day deadline on the Service's adjudication of petitions to lift conditions on residence. He also contends that failure to abide by this 90-day deadline results in a lack of jurisdiction over the petition and automatically confers lawful permanent resident status upon an alien by operation of law. Applying this reasoning to his case, Chettiar suggests that by not reaching a determination on his I-751 petition within 90 days of its initial interview, the CIS lost jurisdiction to adjudicate his petition.

---

[1]The BIA also issued another order in this case denying Chettiar's motion to reopen its original decision on an ineffective assistance of counsel claim. Chettiar does not raise any arguments in support of this claim in his appeal to this Court, and therefore, has waived the issue. *See Ind. Towers v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

**[2]** The statutory language of § 1186a(c)(3)(A) states that the CIS must make a determination on a petition to remove conditions on residence "within 90 days of the interview," not 90 days of an *initial* interview (emphasis added). The most logical interpretation of this provision measures the 90-day period to render a decision on an I-751 petition as beginning from the conclusion of the interview process, rather than the commencement. Chettiar's interview with the CIS began on December 13, 2004, but it did not conclude until the next interview, scheduled for April 8, 2005. The CIS thus did not violate § 1186a(c)(3)(A) by returning a determination on Chettiar's petition on the same day as its final scheduled interview with Chettiar.

**[3]** The structure of the Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, 100 Stat. 3537 ("IMFA"), which enacted the provisions of INA § 216(c)(3)(A)(ii), later codified at 8 U.S.C. § 1186a(c)(3)(A), supports the conclusion that the CIS does not lose jurisdiction over the case if it fails to adjudicate within the statutory period. Although Congress clearly enacted § 1186a(c)(3)(A) to motivate timely adjudication of I-751 petitions, it "did not provide for the alien to be granted benefits regardless of merit where the Service did not comply with the deadlines. To do so would have sacrificed the central purpose of the IMFA, namely, preventing the acquisition of immigration benefits by fraudulent marriages to the cause of efficiency." *Matter of Nwokoma*, 20 I. & N. Dec. 899, 903 (BIA 1994).

**[4]** Stripping the CIS of jurisdiction to adjudicate an I-751 petition whenever it fails to return a determination within 90 days of an initial interview, as Chettiar suggests, would be contrary to the central intent of the IMFA and threaten the agency's ability to effect other provisions in the statute. "[T]he proper construction of section 1186a(c)(3)(A)(ii) requires that flexibility be built into this statutory scheme, rather than a rigid adherence to the 90-day provision." *Id.* at 902; *see also Brock v. Pierce County*, 476 U.S. 253, 260

(1986) (finding statutory language providing that the Secretary of Labor "shall" issue a final determination within 120 days of receiving a complaint not to preclude the Secretary from taking action even after the 120-day period had expired). Moreover, it is completely rational—and certainly not clearly contrary to the plain meaning of § 1186a(c)(3)(A)—to interpret the 90-day post-interview limit on adjudicating applications to remove conditions on permanent residency to begin only after the conclusion of the last interview scheduled with Chettiar. The BIA was correct to conclude that the 90-day deadline imposed by § 1186a(c)(3)(A) did not start "running after the first scheduled interview" because this interview "was not intended by CIS to be the final interview."

## III

Chettiar also claims that the CIS violated his right to procedural due process by failing to provide a reasonable opportunity to participate in a second interview. Because he did not raise this issue at the administrative level, the adequacy of the opportunity afforded to Chettiar to participate in another interview with the CIS is not before us. 8 U.S.C. § 1252(d)(1) (courts may review final orders of removal "only if the alien has exhausted all administrative remedies available to the alien as of right.").[2] Therefore, we lack jurisdiction to consider Chettiar's due process argument.

**PETITION DENIED IN PART AND DISMISSED IN PART.**

---

[2]There is no administrative exhaustion requirement for constitutional due process challenges, but this exception is available only where the due process claim involves "more than mere procedural error that an administrative tribunal could remedy." *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004) (internal quotation marks omitted). Thus, this exception is inapplicable here.